UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ROBERT JOHNSON, ANDREW SMITH, JAMES SANDERS
and BRYAN SMITH,

**10 CIV 4085**

Index No.

Plaintiffs,

-against-

**VERIFIED COMPLAINT**

THE CITY OF NEW YORK, THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION, MANHATTAN
DETENTION COMPLEX, DORA SCHRIRO, Commissioner
of the City of New York Department of Correction,
Individually and in her Official Capacity, MARTIN HORN,
Former Commissioner of the City of New York Department of
Correction, Individually and in his Official Capacity,
JEROME DAVIS, Supervising Warden of the Manhattan
Detention Complex, Individually and in his Official Capacity,
ROSA AGRO, Warden of the Manhattan Detention Complex,
Individually and in his Official Capacity, GEORGE OKADA,
Former Warden of the Manhattan Detention Complex,
Individually and in his Official Capacity, and CORRECTION
OFFICERS JOHN DOES 1 THROUGH 100, Individually and
in their Official Capacity, fictitious names used to designate
presently unknown correction officers herein,



Defendants.
------------------------------------------------------------------X

Plaintiffs, **ROBERT JOHNSON, ANDREW SMITH, JAMES SANDERS,** and

**BRYAN SMITH,** by their attorneys, LAZAROWITZ & MANGANILLO, LLP, complaining of

the defendants hereinafter, states and alleges as follows upon information and belief:

### PRELIMINARY STATEMENT

1.      Plaintiffs bring this action seeking declaratory relief, damages, and punitive

damages against the defendants to redress violations of their constitutional rights resulting from

the application of the defendants' policies, practices and customs concerning the use of strip

searches in the defendants' Manhattan Detention Complex. Plaintiffs seek an order declaring

illegal Defendants' policy of subjecting pretrial detainees in their custody who have been charged with felony offenses to submit to strip searches without any individualized reasonable suspicion that the plaintiffs are in possession of contraband.  Plaintiffs also seek an order declaring illegal Defendants' policy of videotaping and recording these strip searches.

2.     The defendants' aforesaid policies, practices and customs violate those rights of the plaintiffs that are secured by the Fourth and Fourteenth Amendments to the United States Constitution and entitle Plaintiffs to recover damages pursuant to 42 U.S.C. §1983.

3.     Additionally, Plaintiffs assert state law tort claims for negligent hiring, training, supervision and retention; assault and battery; intentional and negligent infliction of emotional distress; *respondeat superior*; and prima facie tort.

## JURISDICTION AND VENUE

4.     This is action is brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

5.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

6.     Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims which arise under the relevant provisions of New York state law.

7.     This action is brought in accord with 42 U.S.C. §1997.

8.     Plaintiffs' claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

9.     Plaintiffs seek permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

10.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

11.     That at all times hereinafter mentioned, the plaintiffs were residents of the State of New York who were detained by the defendants incident to their arrest on felony charges who were subjected to videotaped and recorded strip searches at the Manhattan Detention Complex, located at 125 White Street, New York, New York.

12.     That Defendants coerced, forced and compelled the plaintiffs to submit to said strip searches without legal justification for same.

13.     That Defendants required the plaintiffs to submit to said strip searches while being directly observed by the defendants' female correction officers.

14.     That Defendants required the plaintiffs to submit to said strip searches while being directly observed by other detainees.

15.     That upon information and belief, and at all times hereinafter mentioned, the defendant, **THE CITY OF NEW YORK** (hereinafter referred to as "NYC"), was and still is a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the City and State of New York.

16.     That upon information and belief, and at all times hereinafter mentioned, NYC is a municipal corporation which maintains Defendant, **THE CITY OF NEW YORK DEPARTMENT OF CORRECTION** (hereinafter referred to as the "DOC"), pursuant to law.

17.     That upon information and belief, and at all times hereinafter mentioned, the DOC was and still is a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the City and State of New York.

18.     That upon information and belief, and at all times hereinafter mentioned, the DOC was and still is under the supervision, direction, control and/or employ of NYC.

19.     That upon information and belief, and at all times hereinafter mentioned, the DOC was and still is a department, division or agency of NYC.

20.     That NYC is the public employer of the individuals named as defendants in this action.

21.     That the DOC is the public employer of the individuals named as defendants in this action.

22.     That upon information and belief, and at all times hereinafter mentioned, NYC, its departments, agents, employees and/or servants, owned, operated, maintained, managed, supervised, directed and/or controlled the jails of the City of New York and, more specifically, the defendant, **MANHATTAN DETENTION COMPLEX** (hereinafter referred to as "MDC"), located at 125 White Street, New York, New York.

23.     That upon information and belief, and at all times hereinafter mentioned, the DOC, its agents, employees and/or servants, owned, operated, maintained, managed, supervised, directed and/or controlled the jails of the City of New York and, more specifically, the MDC.

24.     That the MDC is one of the several jails owned, operated, managed, directed, supervised and/or controlled by NYC and/or DOC.

25.     Upon information and belief, Defendant, **DORA SCHRIRO**, is the current Commissioner of the DOC, having been duly appointed by the Mayor of NYC.  Accordingly,

Defendant, **DORA SCHRIRO**, is responsible for administering DOC's jail facilities and for making, promulgating, overseeing, and implementing the policies, practices and customs in effect at MDC and challenged herein. She is sued in her individual and official capacities.

26.     Upon information and belief, Defendant, **MARTIN HORN**, immediately preceded Defendant, **DORA SCHRIRO**, as Commissioner of the DOC, having been duly appointed by the Mayor of NYC. Accordingly, Defendant, **MARTIN HORN**, was responsible for administering DOC's jail facilities and for making, promulgating, overseeing, and implementing the policies, practices and customs in effect at MDC and challenged herein. He is sued in his individual and official capacities.

27.     Upon information and belief, Defendant, **JEROME DAVIS**, is the Supervising Warden of the Manhattan Detention Complex, having been duly appointed by the Commissioner of the DOC. Accordingly, Defendant, **JEROME DAVIS**, is responsible for administering the MDC and for making, promulgating, overseeing, and implementing the policies, practices and customs in effect at MDC and challenged herein.  He is sued in his individual and official capacities.

28.     Upon information and belief, Defendant, **ROSA AGRO**, is the current warden of MDC, having been duly appointed by NYC and/or DOC. Accordingly, Defendant, **ROSA AGRO**, is responsible for making, promulgating, overseeing, and implementing the policies, practices and customs in effect at MDC and challenged herein. He is sued in his individual and official capacities.

29.     Upon information and belief, Defendant, **GEORGE OKADA**, immediately preceded Defendant, **ROSA AGRO**, as Warden of MDC, having been duly appointed by the NYC and/or DOC. Accordingly, Defendant, **GEORGE OKADA**, was responsible for making,

promulgating, overseeing, and implementing the policies, practices and customs in effect at MDC and challenged herein. He is sued in his individual and official capacities.

30. Defendants, **CORRECTION OFFICERS JOHN DOES 1 THROUGH 100** (hereinafter referred to as the "CO John Does"), were and still are correction officers employed by NYC and/or DOC at MDC. The identities of the CO John Does are not presently known, but they are believed to be correction officers endowed and bestowed with various ranks and appointments upon them by NYC and/or DOC, and are sued in their capacities as individuals as well as in their official capacity as correction officers acting under the color of law.

31. As part of their duties, the CO John Does subjected the plaintiffs to videotaped and recorded strip searches without having a reasonable and individualized suspicion that the plaintiffs were in possession of contraband.

32. Additionally, during the course of performing their duties, the CO John Does coerced, forced and compelled the plaintiffs to remove their clothing in a non-private setting and in the presence of female correction officers and staff, as well as other detainees.

33. At all times herein mentioned, each of the defendants was acting under the color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of New York, NYC and/or DOC.

34. Upon information and belief, Defendants, **DORA SCHRIRO** and **MARTIN HORN** (hereinafter collectively referred to as the "Commissioners"), were the DOC Commissioners during the dates set forth in the Complaint.

35. Upon information and belief, Defendant, **JEROME DAVIS**, was the Supervising Warden of MDC (hereinafter referred to as the "Supervising Warden") during the dates set forth in the Complaint.

36.     Upon information and belief, Defendants, **ROSA AGRO** and **GEORGE OKADA** (hereinafter collectively referred to as the "Wardens"), were the Wardens of MDC during the dates set forth in the Complaint.

37.     The Commissioners, Supervising Warden and/or Wardens were charged with the hiring, training, retention, direction, supervision, discipline, and oversight of correction officers, supervisors and staff employed by NYC and DOC, including but not limited to the CO John Does.

38.     That the Commissioners created and/or sanctioned policies, practices and customs that directly led to violations of the plaintiffs' constitutional rights.

39.     That the Supervising Warden created and/or sanctioned policies, practices and customs that directly led to violations of the plaintiffs' constitutional rights.

40.     That the Wardens implemented and carried out policies, practices and customs that directly led to violations of the plaintiffs' constitutional rights.

41.     That upon information and belief, and at all times herein mentioned, the CO John Does were under the direction, supervision, authority and/or control of the municipal defendants, the Commissioners, Supervising Warden and Wardens.

42.     That upon information and belief, and at all times hereinafter mentioned, NYC, its departments, agents, employees and/or servants, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various jails, including but not limited to MDC.

43.     That upon information and belief, and at all times hereinafter mentioned, the DOC, its agents, employees and/or servants, managed, supervised, directed and/or controlled the

custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various jails, including but not limited to MDC.

44.     That at all times hereinafter mentioned, the defendants, individually, as well as their agents, employees and/or servants, assumed the custody and care of the plaintiffs.

45.     That upon information and belief, and at all times hereinafter mentioned, the defendants were entrusted with the custody and care of the plaintiffs.

46.     That at all times hereinafter mentioned, the defendants, individually, as well as their agents, employees and/or servants, assumed a duty of care to the plaintiffs.

47.     That at all times hereinafter mentioned, the defendants, individually, as well as their agents, employees and/or servants, owed a duty of care to the plaintiffs.

## STATEMENT OF FACTS

48.     On or about June 17, 2009, Plaintiff, **ROBERT JOHNSON** (hereinafter "Johnson"), was arrested by the New York City Police Department.

49.     Thereafter, Johnson was indicted for a violation of New York Penal Law §220.16 ("Criminal possession of a controlled substance in the third degree"), a Class "B" felony.

50.     On or about June 18, 2009, Johnson was transferred into the custody, control and care of the defendants, their agents, employees and/or servants.

51.     Johnson remained in the custody, control and care of the defendants, their agents, employees and/or servants, through and including November 2009, at which point he was released.

52.     During Johnson's aforesaid confinement and detention by the defendants, their agents, employees and/or servants, Plaintiff was variously referred to as Inmate Book & Case Number 3490909867.

53.    On or about January 11, 2008, Plaintiff, **ANDREW W. SMITH** (hereinafter "ASmith"), was arrested by the New York City Police Department.

54.    Thereafter, ASmith was indicted for a violation of New York Penal Law §160.15 ("Robbery in the first degree"), a Class "B" felony.

55.    On or about January 12, 2008, ASmith was transferred into the custody, control and care of the defendants, their agents, employees and/or servants.

56.    ASmith remained in the custody, control and care of the defendants, their agents, employees and/or servants, through and including October 15, 2009, at which time he was transferred into the custody, control and care of the New York State Department of Correctional Services.

57.    During ASmith's aforesaid confinement and detention by the defendants, defendants, their agents, employees and/or servants, Plaintiff was variously referred to as Inmate Book & Case Number 3490800756.

58.    On or about November 10, 2008, Plaintiff, **JAMES SANDERS** (hereinafter "Sanders"), was arrested by the New York City Police Department.

59.    Thereafter, Sanders was indicted for a violation of New York Penal Law §220.39 ("Criminal sale of a controlled substance in the third degree"), a Class "B" felony.

60.    On or about November 11, 2008, Sanders was transferred into the custody, control and care of the defendants, their agents, employees and/or servants.

61.    Sanders remained in the custody, control and care of the defendants, their agents, employees and/or servants, through and including January 8, 2010, at which time he was transferred into the custody, control and care of the New York State Department of Correctional Services.

62.     During Sanders's aforesaid confinement and detention by the defendants, their agents, employees and/or servants, Plaintiff was variously referred to as Inmate Book & Case Number 3490819353.

63.     On or about June 5, 2009, Plaintiff, **BRYAN SMITH** (hereinafter "BSmith"), was arrested by the New York City Police Department.

64.     Thereafter, BSmith was indicted for a violation of New York Penal Law §220.39 ("Criminal sale of a controlled substance in the third degree"), a Class "B" felony.

65.     On or about June 6, 2009, BSmith was transferred into the custody, control and care of the defendants, their agents, employees and/or servants.

66.     BSmith remained in the custody, control and care of the defendants, their agents, employees and/or servants, through and including November 5, 2009, at which time he was transferred into the custody, control and care of the New York State Department of Correctional Services.

67.     During BSmith's aforesaid confinement and detention by the defendants, their agents, employees and/or servants, Plaintiff was variously referred to as Inmate Book & Case Number 3490909177.

68.     That pursuant to the defendants' blanket policy, practice and/or custom, all pretrial detainees charged with felony offenses, including but not limited to the plaintiffs herein, were subjected to a strip search at the time of their admission to MDC without the defendants' employees first having an individualized and reasonable suspicion that said persons were in possession of contraband.  Said strip searches were performed without any individualized determination or knowledge of the charge these persons, including but not limited to the

plaintiffs, had been arraigned on, nor having reasonable suspicion that the plaintiffs were in possession of weapons or other contraband at that moment in time.

69.     Thereafter, the defendants, their employees, agents and/or servants, including but not limited to the CO John Does, coerced, forced, compelled and subjected each and every plaintiff to multiple strip searches during their respective periods of detention without individualized, reasonable suspicion and penological justification.

70.     That said strip searches were performed by DOC and CO John Does pursuant to an unlawful blanket policy of the municipal defendants, Commissioners and/or Wardens that required the strip search of all pretrial detainees charged with felonies.

71.     That said strip searches were videotaped and recorded by the CO John Does pursuant to an unlawful policy and practice that required the videotaping and recording of strip searches performed on all pretrial detainees charged with felonies.

72.     That said strip searches were performed in the presence of female officers and/or staff.

73.     That said strip searches were performed in the presence of other detainees and/or convicted inmates.

74.     That during the course of said strip searches, Plaintiffs naked body would be visible to male and female officers and/or staff, as well as other detainees and/or convicted inmates.

75.     That said strip searches were performed immediately after and despite each Plaintiff being visually inspected and frisked by the CO John Does, walking through a metal detector, and sitting on a metal-detecting chair, all without positive indications of contraband.

76.     That the defendants, their employees, agents and/or servants, ordered, condoned, authorized, covered up and/or were otherwise associated with the implementation of the illegal policy and practices relating to the strip searches challenged herein.

77.     That during the five (5) months Johnson was detained at MDC he was unlawfully coerced, forced and compelled to submit to a videotaped and recorded strip search on no less than fifteen (15) occasions, including but not limited to on or about August 24, 2009, October 5, 2009, as well as other dates presently unknown to the plaintiff but within the knowledge and control of the defendants, without the defendants first having an individualized and reasonable suspicion that he was in possession of contraband.

78.     That during the twenty-two (22) months ASmith was detained at MDC he was unlawfully coerced, forced and compelled to submit to a videotaped and recorded strip search on no less than ten (10) occasions, specific dates presently unknown but within the knowledge and control of the defendants, without the defendants first having an individualized and reasonable suspicion that he was in possession of contraband.

79.     That during the fourteen (14) months Sanders was detained at MDC he was unlawfully coerced, forced and compelled to submit to a videotaped and recorded strip search on no less than twelve (12) occasions, including but not limited to on or about November and December 2008, January 17, 2009, February 18, 2009, March 18, 2009, April 22, 2009, June 2, 2009, July 6, 2009, September 10, 2009, September 29, 2009, October 29, 2009, and December 3, 2009, as well as other dates presently unknown to the plaintiff but within the knowledge and control of the defendants, without the defendants first having an individualized and reasonable suspicion that he was in possession of contraband.

80.     That during the seventeen (17) months BSmith was detained at MDC he was unlawfully coerced, forced and compelled to submit to a videotaped and recorded strip search on no less than seven (7) occasions, including but not limited to on or about June 7, 2009, June 10, 2009, June 29, 2009, August 13, 2009, September 8, 2009, September 10, 2009, September 26, 2009, as well as other dates presently unknown to the plaintiff but within the knowledge and control of the defendants, without the defendants first having an individualized and reasonable suspicion that he was in possession of contraband.

81.     That each of the plaintiffs has formally grieved the aforesaid conduct through DOC's available grievance program.

82.     That the defendants have failed to remedy and/or cure the aforesaid conduct.

83.     That the DOC, its agents, employees and/or servants, have informed the plaintiffs that grievances filed with respect to the aforesaid conduct cannot be resolved through the inmate grievance program.

84.     That the plaintiffs have exhausted all administrative remedies.

85.     That none of the defendants, their agents, employees and/or servants, took any action to intercede and/or halt the illegal policy and/or practice of the strip searches challenged herein, nor did any of them promptly report to their supervisors or other city or federal authorities regarding same.

86.     That none of the defendants, their agents, employees and/or servants, who were aware of the aforesaid strip searches took appropriate action to investigate and report same.

87.     That the aforesaid conduct was unnecessary, unreasonable, excessive, and served no legitimate penological interest.

88.     That the defendants, their agents, employees and/or servants, including but not limited to correctional officers, staff and supervisory personnel, acted with deliberate indifference to the plaintiffs' constitutional rights.

89.     As a direct and proximate result of the defendants' policy and/or implementation thereof, the plaintiffs suffered physical, psychological and emotional injuries, pain and suffering, invasion of privacy, violation of due process of law, and violation of state and federal statutory and constitutional rights, and are entitled to recover damages.

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. §1983 CLAIMS

90.     Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "89", inclusive, of this Complaint, as if same were fully set forth herein at length.

91.     Defendants' policies, practices and customs regarding the videotaped and recorded strip searches complained of herein violated the plaintiffs' rights under the Fourth Amendment to be free from unreasonable searches and seizures and violated the plaintiffs' rights to due process and privacy under the Fourteenth Amendment, and directly and proximately damaged the plaintiffs.

92.     It is clear from its pervasive and widespread application that the defendants drafted and promulgated an unconstitutional policy or custom regarding the care and treatment of pretrial detainees such as the plaintiffs, giving rise to a municipal liability claim. Additionally, it is clear that the defendants allowed the continuance of this policy or custom.

93.     The supervisory staff within the municipal defendants knew that the pattern of abusive strip searches described above existed in MDC. Their failure to take measures to curb this pattern of abuse constitutes acquiescence in the known unlawful behavior of their

subordinates. The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that same has been persistently brought to their attention, constitutes deliberate indifference to the rights and privacy of pretrial detainees in their care and custody, including the plaintiffs.

94.      The aforesaid conduct has been a substantial factor in the continuation of such abuse and a proximate cause of the constitutional violations alleged in this Complaint.

95.      As a result of the foregoing, Plaintiff is entitled to recover damages against the defendants for said constitutional violations, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## PENDANT STATE CLAIMS

96.      Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "95", inclusive, of this Complaint, as if same were fully set forth herein at length.

97.      That each of the plaintiffs duly served and filed with the defendants Notices of Claim setting forth the time, place, substance of claim, and description of injuries sustained by the plaintiffs.

98.      That more than thirty (30) days have elapsed since the date Plaintiffs duly served and filed with the defendants said notices of claim and the defendants have neglected and refused to make an adjustment thereof.

99.      That the defendants did not conduct a Municipal Hearing pursuant to Section 50-h of the General Municipal and, as such, same is deemed waived.

100.     This action is commenced, including all applicable tolls, within the applicable statute of limitations for the within claims.

101.     This action falls within one or more of the exceptions set forth in CPLR §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

102.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "101", inclusive, of this Complaint, as if same were fully set forth herein at length.

103.    That the defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, were negligent in their hiring, training, retention, supervision, direction, control, appointment and/or promotion of the their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, in the instance.

104.    The failure of the defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, to adequately train their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, in the exercise of their employment functions, and their failure to enforce the laws of the State of New York and the regulations of the City of New York, is evidence of the reckless lack of cautious regard for the rights of those persons in their custody, including the plaintiffs herein, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

105.    The Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, were careless and reckless in hiring, appointing, retaining and promoting their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, in that said employees lacked the experience and ability to be employed by Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**; in failing to exercise due

care and caution in their hiring, appointment and promotion practices, and in particular, hiring the defendant-employees who lacked the mental capacity and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them to be an employee; in that said defendants, their agents, servants and/or employees, failed to suspend and/or terminate the defendant-employee(s) when such action was either proper or required; and in being otherwise careless, negligent and reckless.

106.    The defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, knew or should have known in the exercise of reasonable care, the propensities of the Commissioners, Supervising Warden, Wardens and CO John Does to engage in the wrongful conduct heretofore alleged in this Complaint.

107.    The aforesaid acts of Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, resulted in the violation of the plaintiffs' constitutional rights.

108.    The aforesaid acts of Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, resulted in the plaintiffs being caused to experience severe physical, psychological and emotional pain and suffering, and in other respects, were damaged.

109.    Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, knew or should have known that their policies and

practices, as well as their negligent supervision, training, appointment and promotion of their employees, agents and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, created an atmosphere where the most offenders felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and prosecuted.

110.    That the mistreatment and abuse of the plaintiffs, as set forth above, were reasonably foreseeable consequences of the defendants' negligent conduct.

111.    By reason of the foregoing, Plaintiff has been damaged in an indeterminate sum of not less than Five Million ($5,000,000.00) Dollars, together with attorney's fees and the costs and disbursements of this action.

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## ASSAULT AND BATTERY

112.    Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "111", inclusive, of this Complaint, as if same were fully set forth herein at length.

113.    As set forth above, Plaintiff was battered and subjected to an intrusive body assault by the defendants, their agents, employees and/or servants.

114.    As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

115.    By reason of the foregoing, Plaintiff has been damaged in an indeterminate sum of not less than Five Million ($5,000,000.00) Dollars, together with attorney's fees and the costs and disbursements of this action.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

116.   Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "115", inclusive, of this Complaint, as if same were fully set forth herein at length.

117.   The aforesaid acts of the defendants, acting individually and/or in conjunction with the other defendants, their employees, agents and/or servants, were intentional, malicious, excessive and served no reasonable or legitimate penological interest.

118.   As a result of the foregoing, Plaintiff suffered severe and serious physical, psychological and emotional injuries.

119.   The defendants' intentional, reckless, and negligent infliction of emotional and mental distress constituted misconduct of an egregious nature that exceeds all bounds usually tolerated by society.

120.   By reason of the foregoing, Plaintiff has been damaged in an indeterminate sum of not less than Five Million ($5,000,000.00) Dollars, and is entitled to an award of punitive damages against the defendants in the sum of Five Million ($5,000,000.00) Dollars, together with attorney's fees, costs and disbursements.

## FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## *RESPONDEAT SUPERIOR*

121.   Plaintiffs repeat, reiterate and reallege each and every allegation of paragraphs "1" through "120", inclusive, of this Complaint, as if same were fully set forth herein at length.

122.   Independent of the constitutional claims against the defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, arising out

of the Monell policy and practice construct, Plaintiffs allege a *respondeat superior* claim over and against said defendants under pendent party and pendent State law jurisdiction.

123.   Inasmuch as the defendant-employees of **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION** were acting for, upon, and in furtherance of the business of their employer(s) and within the scope of their employment, Defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, are liable under the doctrine of *respondeat superior* for the tortious actions of their agents, employees and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does.

124.   By reason of the foregoing, Plaintiff has been damaged in an indeterminate sum of not less than Five Million ($5,000,000.00) Dollars, together with attorney's fees, costs and disbursements.

## SIXTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## PRIMA FACIE TORT

125.   Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "124", inclusive, of this Complaint, as if same were fully set forth herein at length.

126.   As set forth above, the actions and conduct of the defendants, **THE CITY OF NEW YORK** and **CITY OF NEW YORK DEPARTMENT OF CORRECTION**, their agents, employees and/or servants, including but not limited to the Commissioners, Supervising Warden, Wardens and CO John Does, inflicted harm upon the plaintiffs, without legal justification, out of disinterested malevolence, and were the proximate cause of injuries and damages suffered by the plaintiff.

127.   By reason of the foregoing, Plaintiff has been damaged in an indeterminate sum of not less than Five Million ($5,000,000.00) Dollars, together with attorney's fees, costs and disbursements.

## JURY DEMAND

128.   Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

**WHEREFORE**, the plaintiff requests the following relief jointly and severally as against all of the defendants:

1.   Declaratory judgment that the defendants' policy, practice and/or custom of videotaping and recording strip searches of pretrial detainees charged with felony offenses confined to the Manhattan Detention Complex is unconstitutional;

2.   An award of compensatory damages in an amount to be determined at trial;

3.   An award of punitive damages in an amount to be determined at trial;

4.   An award of attorney's fees, costs and disbursements; and

5.   Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       May 3, 2010

Respectfully submitted,

**LAZAROWITZ & MANGANILLO, L.L.P.**

By: _____
        Philip M. Hines, Esq. (PH5954)
        phines@lazmanlaw.com
        *Attorneys for Plaintiffs*
        Office and P.O. Address
        2004 Ralph Avenue

Brooklyn, New York 11234
(718) 531-9700
Our File No.: 09-109

## ATTORNEY VERIFICATION

PHILIP M. HINES, ESQ., an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

That I am an associate of the law firm of LAZAROWITZ & MANGANILLO, L.L.P., attorneys for the plaintiffs in the within action, **ROBERT JOHNSON, ANDREW SMITH, JAMES SANDERS,** and **BRYAN SMITH;** that I have read the foregoing **VERIFIED COMPLAINT** and know the contents thereof; that same is true to my own knowledge and/or the contents of the file(s) maintained by this office, except as to the matters alleged to be upon information and belief, and as to those matters, I believe them to be true.

The reason this Verification is made by me and not by the aforesaid plaintiffs is that the said plaintiffs are presently outside of the County in which the Affirmant's office is located.

PHILIP M. HINES

Affirmed to this 3rd day of May, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
ROBERT JOHNSON, ANDREW SMITH, JAMES SANDERS,
and BRYAN SMITH,

                                        Plaintiffs,                          Index No.

                    -against-

THE CITY OF NEW YORK, THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION, MANHATTAN
DETENTION COMPLEX, DORA SCHRIRO, Commissioner
of the City of New York Department of Correction,
Individually and in her Official Capacity, MARTIN HORN,
Former Commissioner of the City of New York Department of
Correction, Individually and in his Official Capacity,
JEROME DAVIS, Supervising Warden of the Manhattan
Detention Complex, Individually and in his Official Capacity,
ROSA AGRO, Warden of the Manhattan Detention Complex,
Individually and in his Official Capacity, GEORGE OKADA,
Former Warden of the Manhattan Detention Complex,
Individually and in his Official Capacity, and CORRECTION
OFFICERS JOHN DOES 1 THROUGH 100, Individually and
in their Official Capacity, fictitious names used to designate
presently unknown correction officers herein,

                                        Defendants.
--------------------------------------------------------------------X

## SUMMONS AND VERIFIED COMPLAINT

**LAZAROWITZ & MANGANILLO, L.L.P.**
**Attorneys for Plaintiffs**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

Signature (Rule 130-1.1-a)

PHILIP M. HINES, ESQ.
Service of a copy of the within is hereby admitted.

Dated: May 3, 2010

**PLEASE TAKE NOTICE:**

____  __Notice of Entry__
      that the within is a true copy of an order duly entered in the office of the clerk of the within named
      court on the      day of            , 2010.
____  __Notice of Settlement__
      that an order of which the within is a true copy will be presented for settlement before the Hon.
      , one of the Judges of the within named Court, at            , on the day of            , 2010.

**DATED:**                    , 2010

                                        Yours, etc.
                                        **Lazarowitz & Manganillo, L.L.P.**